# Exhibit A

| CIVIL ACTION COVER SHEET | DOCKET NO(S) B.L.S. 15-2059 | Trial Court Of Massachusetts Superior Court Department County: SUFFOLK |
|---|---|---|

| PLAINTIFF(S) Eliane Evers, Stefon Harris and Joshua Colvin, individually and as representatives of the classes | DEFENDANT(S) The TJX Companies, Inc. |
|---|---|

| ATTORNEY, FIRM NAME, ADDRESS AND TELEPHONE Board of Bar Overseers number Stuart Rossman (BBO 430640), Charles Delbaum (BBO 543225), National Consumer Law Center, 7 Winthrop Square, 4th Floor, Boston, MA 02110, 617-542-8010 | ATTORNEY (if known) |
|---|---|

Origin Code Original Complaint

TYPE OF ACTION AND TRACK DESIGNATION (See reverse side) CODE NO. TYPE OF ACTION (specify) TRACK IS THIS A JURY CASE? * BK.1, complex consumer class action (B) (X) Yes ( ) No

The following is a full and detailed statement of the facts on which plaintiff relies to determine eligibility in to The Business Litigation Session.

This action is properly filed and venued in the Superior Court Business Litigation Session of the Suffolk County Superior Court pursuant to Superior Court Administrative Directive No. 09-1.  Specifically, this action is a complex consumer class action lawsuit brought under the Fair Credit Reporting Act, 15 U.S.C. § 1681, et seq.,  The claims relate to potentially thousands of consumers who allegedly did not receive the notice required under federal law before an employer conducts a background check on an employee or job applicant, and consequently did not give proper authorization for the background check.  Accordingly, this action is properly brought in the Business Litigation Session pursuant to sections a.2 and k.1 of Superior Court Administrative Directive No. 09-1.



RECEIVED
JUL 08 2015
SUPERIOR COURT-CIVIL
MICHAEL JOSEPH DONOVAN
CLERK/MAGISTRATE

* A Special Tracking Order shall be created by the Presiding Justice of the Business Litigation Session at the Rule 16 Conference.

PLEASE IDENTIFY, BY CASE NUMBER, NAME AND COUNTY, ANY RELATED ACTION PENDING IN THE SUPERIOR COURT DEPARTMENT.

"I hereby certify that I have complied with the requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods." Signature of Attorney of Record _____

DATE: 7/8/15

## COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss.

SUPERIOR COURT DEPARTMENT
BUSINESS LITIGATION SESSION

_____

Eliane Evers, Stefon Harris, and Joshua Colvin,
individually and as representatives of the classes,

Plaintiffs,

v.

The TJX Companies, Inc.,

Defendant.
_____

Case No.    15-2069 BLS

## CLASS ACTION COMPLAINT
## (JURY TRIAL DEMANDED)

Plaintiffs Eliane Evers ("Evers"), Stefon Harris ("Harris"), and Joshua Colvin ("Colvin") (collectively "Plaintiffs"), by and through their attorneys, on behalf of themselves and the classes set forth below, bring the following Class Action Complaint against The TJX Companies, Inc. ("TJX" or "Defendant").

## INTRODUCTION

1.     This consumer class action is brought under the Fair Credit Reporting Act, 15 U.S.C. § 1681, _et seq_. ("FCRA") against an employer who routinely violates the FCRA's basic protections by failing to provide required disclosures prior to conducting background checks.

## THE PARTIES

2.     Plaintiff Eliane Evers is an individual person and a resident of Simpsonville, North Carolina.

3.     Plaintiff Stefon Harris is an individual person and a resident of Brooklyn, New York.



RECEIVED
JUL 0 8 2015
SUPERIOR COURT-CIVIL
MICHAEL JOSEPH DONOVAN
CLERK/MAGISTRATE

1

4.      Plaintiff Joshua Colvin is an individual person and a resident of Eden Prairie, Minnesota.

5.      Defendant The TJX Companies, Inc. is a Delaware corporation, with its principal office located at 770 Cochituate Road, Framingham, Massachusetts, 01701, and has multiple stores located in Suffolk County, Massachusetts (including, but not limited to: TJ Maxx at 350 Washington St, Boston, MA 02109; Marshalls at 350 Washington St, Boston, MA 02108; Marshalls at 200 Border Street, East Boston, MA 02128; Marshalls, 500 Boylston Street, Boston, MA 02116; Marshalls at 126 Brookline Ave, Boston, MA 02215; HomeGoods at 162 Everett Ave, Chelsea, MA 02150; HomeGoods at 60 Everett St, Allston, MA 02134).

6.      Defendant "is the leading off-price retailer of apparel and home fashions in the U.S. and worldwide" and has "more than 3,200 stores in 6 countries, 3 e-commerce sites, and approximately 191,000 Associates." *See* http://www.tjx.com/about-tjx.asp.

7.      In the United States, Defendant operates retail stores T.J. Maxx, Marshalls, HomeGoods, and Sierra Trading Post.

## JURISDICTION AND VENUE

8.      This Court has jurisdiction over this action pursuant to 15 U.S.C. § 1681p, which allows claims under the FCRA to be brought in any appropriate court of competent jurisdiction. Massachusetts's Superior Courts are endowed with "original jurisdiction of civil actions for money damages." M.G.L.A. ch. 212 § 3.

9.      Venue is proper in this County pursuant to M.G.L.A. ch. 223 § 1, because Defendant resides in the Commonwealth and regularly does business in Suffolk County.

10.     Venue is proper in the Business Litigation Section pursuant to Superior Court Administrative Directive No. 09-1, as this case is brought as a class action which will need substantial case management and is a complex consumer dispute.

## STATUTORY BACKGROUND

11.     Enacted in 1970, the FCRA's passage was driven in part by two related concerns: first, that consumer reports were playing a central role in people's lives at crucial moments, such as when they applied for a job or credit, and when they applied for housing.  Second, despite their importance, consumer reports were unregulated and had widespread errors and inaccuracies.

12.     While recognizing that consumer reports play an important role in the economy, Congress wanted consumer reports to be "fair and equitable to the consumer" and to ensure "the confidentiality, accuracy, relevancy, and proper utilization" of consumer reports.  15 U.S.C. § 1681.

13.     Congress was particularly concerned about the use of consumer reports by employers to deny otherwise qualified job applicants or to take other adverse actions against employees.  Accordingly, Congress required employers to make a clear and conspicuous written disclosure to employees and job applicants that a consumer report may be obtained for employment purposes, in a document that consists solely of the disclosure:

> [A] person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless –
>> (i) a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, in a document that consists solely of the disclosure, that a consumer report may be obtained for employment purposes

15 U.S.C. § 1681b(b)(2).  This is commonly referred to as the "stand-alone disclosure" requirement.

14.     The FCRA's stand-alone disclosure requirement ensures that employees and job applicants know when reports about them are being generated.  This notice is one of many notice requirements of the FCRA that serve to ensure that consumers are aware that consumer reports are generated about them, that they know their rights, and that they have the opportunity to dispute errors in their reports.   *See* 15 U.S.C. § 1681b(b)(3)(A) (establishing pre-adverse employment action notice requirement); § 1681b(4)(B) (requiring notification of national security investigation); § 1681c(h) (requiring notification of address discrepancy); § 1681d(a) (requiring disclosure of investigative report); § 1681g (requiring full file disclosure to consumers); § 1681k(a)(1) (requiring disclosure regarding the use of public record information); § 1681h (setting forth form and conditions of disclosure); § 1681m(a) (requiring notice of adverse action based on consumer report).

15.     As discussed below, Defendant routinely violates the FCRA by failing to provide the required stand-alone disclosure to employees and job applicants.

## ALLEGATIONS RELATING TO PLAINTIFFS

16.     On or about September 2013, Plaintiff Evers applied for a position with T.J. Maxx at its store located at 820 Woods Crossing Road, Greensville, South Carolina.  Before being offered a position, T.J. Maxx provided Evers with a "Disclosure and Acknowledgment" relating to the background investigation it intended to conduct on Evers.

17.     On or about September 21, 2013, T.J. Maxx offered Evers a position putting merchandise onto shelves and operating the cash register.  On or about September 23, 2013, T.J. Maxx obtained a background report on Evers from the consumer reporting agency First Advantage.

4

18.     Evers worked for T.J. Maxx for approximately four months beginning in September 2013.  Evers resigned her position because she was seeking full-time work and T.J. Maxx was only offering her part-time work.

19.     In or around November 2010, Plaintiff Harris applied in store for a position at T.J. Maxx in Brooklyn, New York.

20.     Harris worked at the store from November 2010 to December 2012.

21.     In October 2014, Harris called consumer reporting agency First Advantage.  A First Advantage representative told Harris that Defendant had procured a consumer report on him in connection with his application for employment with T.J. Maxx in or around October 2010.  The phone call was the first time that Harris discovered that Defendant had procured a consumer report on him.

22.     In or around October 2012, Plaintiff Colvin applied for a job as a stockroom associate at Marshalls in Edina, Minnesota.

23.     Colvin worked at Marshalls from October 2012 to January 2013.

24.     In September 2014, Colvin called consumer reporting agency First Advantage.  A First Advantage representative told Colvin that Defendant had procured a consumer report on him in November 2012.  The phone call was the first time that Colvin discovered that Defendant had procured a consumer report on him.

25.     The only document Plaintiffs ever received from Defendant which pertained in any way to Defendant's decision to procure a consumer report on them was the form of Acknowledgement and Disclosure attached hereto as Exhibit A ("Disclosure").

26.     The Disclosure, however, is not a stand-alone disclosure as required by the FCRA.  Instead, in the same paragraph, the Disclosure purports to authorize broad categories of entities to release information relating to the subject of the background report, stating:

> I hereby authorize the obtaining of "consumer reports" by the Company at any time after receipt of this authorization, and throughout my employment, including at the time of promotion, transfer, or reassignment, if applicable. *To this end, I hereby authorize, without reservation, any law enforcement agency, administrator, state or federal agency, institution, school or university (public or private), information service bureau, employer or insurance company to furnish any and all background information requested by Lexis Nexis[1] PO Box 7147-7090 Philadelphia PA 19170-7090, another outside organization acting on behalf of the Company, and/or the Company itself.* I agree that a facsimile ("fax"), electronic or photographic copy of this Authorization shall be as valid as the original.

(emphasis added) (Ex. A).

27.     TJX's inclusion of this extraneous information was intentional and self-interested. In particular, the above language allowed TJX and First Advantage to procure information on applicants and employees, and purported to operate as a functional waiver of employees and applicants' privacy rights.

28.     State and federal agencies, schools, financial institutions, health care providers, and other entities, all of which fall within the broad release language included in Exhibit A, are subject to specific privacy laws which regulate nonpublic information.  For example, the Family Educational Rights & Privacy Act, 20 U.S.C. § 1232g; 34 CFR Part 99, protects school records from disclosure absent consent from the student.  Similarly, the Gramm-Leach-Bliley Act requires financial institutions to safeguard nonpublic information at 15 U.S.C. §§ 6801-6809, and the Health Insurance Portability and Accountability Act, which sets forth its Privacy Rule at 45

---

[1] Lexis Nexis acquired First Advantage in approximately March 2013.

CFR Part 160, and Subparts A and E of Part 164, requires covered institutions to keep medical records private.

29.     Most states' government data laws are even more restrictive, and prohibit the disclosure of information on individuals held by many state agencies. *See, e.g.*, Russom, Miriam B., Robert H. Sloan, and Richard Warner, *Legal Concepts Meet Technology: A 50 State Survey of Privacy Laws*, Proceedings of The 2011 Workshop on Governance of Technology, Information,        and        Policies-GTIP        '11        (2011),        (available        at https://www.acsac.org/2011/workshops/gtip/p-Russom.pdf).

30.     For example, Massachusetts recognizes a general right to privacy, which is set forth in MGL c.214, s1B.  The Massachusetts Attorney General has issued detailed regulations regarding the safeguarding of personal information at 940 CMR 27, and Governor Deval Patrick issued Executive Order 504, which required state agencies to adopt the "maximum feasible measures" to protect the "confidentiality" of "personal information."

31.     South Carolina law also restricts the dissemination of information regarding individuals held by state agencies, including information that would identify the individual, such as social security numbers. *See* S.C. Code Ann. § 30-2-310.

32.     New York law similarly protects the privacy of information about individuals held by state agencies. *See* N.Y. Pub. Off. Law § 96 (McKinney).  In addition, New York law protects the privacy of educational and juvenile delinquency records. *See* N.Y. Educ. Law § 2-d (McKinney).

33.     Minnesota's Government Data Practices Act also sharply restricts the disclosure of personal information held by state agencies.  For example, Minnesota law limits the

dissemination of non-public data on individuals to what is necessary to the administration or management of state or federal programs. *See* Minn. Stat. § 13.05.

34.     TJX's release, however, purports to waive, "without reservation," the carefully promulgated protections enacted by these and other states that protect the privacy of personal information held by state agencies.

35.     By including this broad release of information in its forms, TJX placed its own interests ahead of those of consumers.  TJX's inclusion of the release of information made it easier for TJX to gather information about employees and applicants, and protected itself and third parties from liability for acquiring such information.  This benefit to TJX came at the expense of consumers' statutory right to receive a compliant disclosure.

36.     TJX's failure to provide a stand-alone disclosure violates a fundamental protection afforded to employees under the FCRA, is contrary to the unambiguous language of the Act, and is counter to FTC guidance and case law.  The FTC has stated that disclosure forms must not be "encumbered by any other information ... [in order] to prevent consumers from being distracted by other information side-by-side with the disclosure." *See* Exhibit B, Letter from Clarke W. Brinckerhoff, Fed. Trade Comm'n, to H. Roman Leathers, Manier & Herod (Sept. 9, 1998) (emphasis added).

37.     The FTC has also opined that it is inappropriate to include extraneous information such as waivers in disclosure forms. *See* Exhibit C, *Advisory Opinion to Hauxwell* (June 12, 1998), 1998 WL 34323756 ("[T]he [disclosure] form should not contain any extraneous information . . . The inclusion of such a waiver in a disclosure form will violate Section

604(b)(2)(A)[2] of the FCRA, which requires that a disclosure consist 'solely' of the disclosure that a consumer report may be obtained for employment purposes.").

38.      Numerous courts have agreed with the FTC. *See Moore v. Rite Aid Hdqtrs Corp.*, No. CIV.A. 13-1515, 2015 WL 3444227, at *12 (E.D. Pa. May 29, 2015) ("[T]he text of the statute and the available agency guidance demonstrate[] that the inclusion of information on the form apart from the disclosure and related authorization violates § 1681b(b)(2)(A)."); *Lengel v. HomeAdvisor, Inc.*, No. 15-2198-RDR, ___ F. Supp. 3d ___, 2015 WL 2088933, at *8 (D. Kan. May 6, 2015) ("[I]t may be plausibly asserted that the standalone disclosure provision was recklessly violated by the use of the Release form because it did not consist solely of the disclosure that a consumer report may be obtained for employment purposes."); *Speer v. Whole Food Mkt. Grp., Inc.*, No. 8:14-CV-3035-T-26TBM, 2015 WL 1456981, at *3 (M.D. Fla. Mar. 30, 2015) (finding that plaintiff had stated a claim wherein plaintiff alleged that "the inclusion of the waiver along with the disclosure violated the FCRA"); *Milbourne v. JRK Residential Am., LLC*, ___ F. Supp. 3d ___, No. 3:12-cv-861, 2015 WL 1120284, at *6 (E.D. Va. Mar. 10, 2015) ("Thus, judging by the text of the statute alone, inclusion of a waiver within the document containing the disclosure would violate [the FCRA]."); *Dunford v. American Databank, Inc.*, No. C 13-03829, ___ F. Supp. 3d ___, 2014 WL 3956774, at *6 (N.D. Cal. Aug. 12, 2014) (finding document that contained a liability release to "not consist solely of the disclosure because it added a paragraph exonerating [the defendant]"); *Avila v. NOW Health Grp., Inc.*, No. 14 C 1551, 2014 WL 3537825, at *2 (N.D. Ill. July 17, 2014) (finding inclusion of liability waivers to be "contrary to the express language of the FCRA, which requires a disclosure 'in a document that consists solely of the disclosure'"); *Singleton v. Domino's Pizza, LLC*, No. 12-cv-823, 2012

---

[2] This section of the FCRA is currently located in the U.S. Code at 15 U.S.C. 1681b(b)(2)(A). The text remains the same as it was when this guidance was issued.

WL 245965, at *9 (D. Md. Jan. 25, 2012) ("[B]oth the statutory text and FTC advisory opinions indicate that an employer violates the FCRA by including a liability release in a disclosure document."); *Reardon v. Closetmaid Corp.*, No. 2:-8-cv-01730, 2013 WL 6231606, at *10-11 (W.D. Pa. Dec. 2, 2013) (finding disclosure with liability waiver to be "facially contrary to the statute at hand, and all of the administrative guidance"); *Jones v. Halstead Mgmt. Co., LLC*, ___ F. Supp. 3d ___, No. 14-CV-3125 VEC, 2015 WL 366244, at *5 (S.D.N.Y. Jan. 27, 2015) (finding disclosure to not stand-alone when it included "information regarding time frames within which the applicant must challenge the accuracy of any report; an acknowledgement that 'all employment decisions are based on legitimate non-discriminatory reasons;' . . . and all sorts of state-specific disclosures"); *Miller v. Quest Diagnostics*, No. 2:14-cv-4278, ___ F. Supp. 3d ___, 2015 WL 545506, at *3 (W.D. Mo. Jan. 28, 2015) (finding "inclusion of the state-mandated consumer report information, administrative sections, *and* release language in the disclosure violates 15 U.S.C. § 1681b(b)(2)"); *see also E.E.O.C. v. Video Only, Inc.*, No. CIV. 06-1362-KI, 2008 WL 2433841, at *11 (D. Or. June 11, 2008) (granting summary judgment against the defendant-employer who made disclosure "as part of its job application which is not a document consisting solely of the disclosure.").

39.    The FCRA does not allow the inclusion of an authorization for third parties to provide information to the consumer reporting agency, or anyone else, in a document which is supposed to consist solely of a disclosure.

40.    While the FCRA contains one limited exception to the requirement that the disclosure be provided in a document that consists solely of the disclosure, that exception is limited to the inclusion of an authorization for the recipient of the report to receive it.

41.     Specifically, 15 U.S.C. § 1681b(b)(2)(A)(ii) states that an authorization from the consumer for the procurement of the report by the requesting employer may be included on the stand-alone disclosure.  It states that a consumer report may not be procured unless:

> the consumer has authorized in writing (which authorization may be made on the document referred to in clause (i)) the procurement of the report **by that person**.

42.     Neither 15 U.S.C. § 1681b(b)(2)(A)(ii) nor any other part of the FCRA nor any regulatory guidance states or implies that it is permissible for a stand-alone disclosure to include an authorization for *third parties* to provide information to the consumer reporting agency, to the Defendant, or to anyone else.  Indeed, the plain text of § 1681b(b)(2)(A)(ii) limits the scope of any authorization that may be included to an authorization allowing the procurement of the report by the "person" who will be using the report for employment purposes.  It does not allow any other kind of anuthorization.

43.     Defendant knew it was not providing the legally required disclosure.

44.     As part of its service agreement with the consumer reporting agencies from whom it procured consumer reports during the class period, Defendant acknowledged that the reports it obtains from those entities are consumer reports.

45.     In its contract with consumer reporting agencies from whom it procured consumer reports during the class period, TJX certified that before obtaining a consumer report, Defendant would provide a disclosure in writing to the consumer that a consumer report will be obtained for employment purposes and that such disclosure would be made in a document consisting solely of the disclosure.

46.     Defendant also agreed to follow special procedures for preparation and use of a consumer report in the case of suspected misconduct or violation of state, federal, or local law.

47.     Plaintiffs' reports were not procured by Defendant using the special procedures referred to in the contracts.

48.     Defendant did not procure Plaintiffs' reports in connection with any investigation of suspected misconduct relating to employment, or compliance with federal, state, or local laws and regulations, the rules of a self-regulatory organization, or any preexisting written policies of the employer.

49.     All Plaintiffs suffered a concrete injury as a result of Defendant's illegal conduct. They were deprived of a disclosure to which they had a legal right, and their privacy was invaded when they were the subject of a consumer report procured for employment purposes by Defendant in circumstances where Defendant did not provide the legally required disclosure.

## CLASS ALLEGATIONS

50.     Plaintiffs Harris and Colvin assert Count I on behalf of the "Five Year Class" defined as follows:

> All individuals on whom TJX obtained a consumer report for employment purposes in the five years preceding the filing of this Complaint and continuing through the date the class list is prepared.

51.     Plaintiff Evers asserts Count I on behalf of the "Two Year Sub-Class" as defined as follows:

> All individuals on whom TJX obtained a consumer report for employment purposes in the two years preceding the filing of this Complaint and continuing through the date the class list is prepared.

52.     Numerosity:  The classes are so numerous that joinder of all class members is impracticable.  TJX has thousands of employees, many of whom are members of the classes.

53.     Typicality:  Plaintiffs' claims are typical of the class members' claims.  Defendant treated Plaintiffs in the same manner as other class members.

54.     Adequacy:  Plaintiffs will fairly and adequately protect the interests of the classes, and has retained counsel experienced in complex class action litigation.

55.     Commonality:  Common questions of law and fact exist as to all members of the classes and predominate over any questions solely affecting individual members of the classes. These common questions include:

> a.  Whether Defendant violated the FCRA by failing to provide a stand-alone disclosure to class members;
>
> b.  Whether Defendant violated the FCRA by including an authorization for release of information from multiple parties to itself and numerous other parties in what the FCRA requires to be a stand-alone disclosure;
>
> c.  Whether Defendant's violation of the FCRA was willful;
>
> d.  The proper measure of statutory and punitive damages; and
>
> e.  The proper form of declaratory relief.

56.     Class certification is appropriate under Mass. Civ. P. R. 23(b) because questions of law and fact common to the classes predominate over any questions affecting only individual members of the classes, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.  Defendant's conduct described in this Complaint stems from common and uniform policies and practices, resulting in common violations of the FCRA.  Members of the classes do not have an interest in pursuing separate actions against Defendant, as the amount of each class member's individual claim is small compared to the expense and burden of individual prosecution, and Plaintiffs are unaware of any similar claims brought against Defendant by any members of the classes on an individual basis.  Class certification also will obviate the need for unduly duplicative litigation that might result in

inconsistent judgments concerning Defendant's practices.  Moreover, management of this action as a class action will not present any likely difficulties.  In the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of all class members' claims in a single forum.

**COUNT I**
**15 U.S.C. § 1681b(b)(2)**
***Failure to Provide Stand-Alone Disclosure***
***On Behalf of Plaintiffs, the 5 Year Class, and the 2 Year Sub-Class***

57.     Defendant violated the FCRA by procuring consumer reports on Plaintiffs and class members without making the stand-alone disclosure required by the FCRA.  *See* 15 U.S.C. § 1681b(b)(2).

58.     The foregoing violations were willful.  Defendant acted in deliberate or reckless disregard of its obligations and the rights of Plaintiffs and class members under 15 U.S.C. § 1681b(b)(2)(A)(i).  Defendant's willful conduct is reflected by, *inter alia*, the following:

(a)     The FCRA was enacted in 1970; Defendant has had over 40 years to become compliant;

(b)     Defendant's conduct is inconsistent with the FTC's longstanding regulatory guidance, judicial interpretation, and the plain language of the statute;

(c)     Defendant knew or had reason to know from its communications with its consumer reporting agencies that Defendant's conduct violated the FCRA;

(d)     Defendant certified to its consumer reporting agencies that it would comply with the disclosure requirements of the FCRA;

(e)     Defendant repeatedly and routinely uses Exhibit A to procure consumer reports;

14

(f)     Despite the pellucid statutory text and there being a depth of guidance from the FTC and the courts, Defendant systematically procured consumer reports without first disclosing in writing to the consumer *in a document that consists solely of the disclosure*, that a consumer report may be obtained for employment purposes;

(g)     Defendant knowingly benefitted from its unlawful conduct by making it easier to obtain information from third parties, even though Defendant received this benefit only at the expense of consumers' right to a stand-alone disclosure; and

(h)     By adopting such a policy, Defendant voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless.

59.     Plaintiffs and the class members are entitled to statutory damages of not less than $100 and not more than $1,000 for each and every one of these violations, pursuant to 15 U.S.C. § 1681n(a)(1)(A).   Plaintiffs and the class members are also entitled to punitive damages for these violations, pursuant to 15 U.S.C. § 1681n(a)(2).   Plaintiffs and the class members are further entitled to recover their costs and attorneys' fees, pursuant to 15 U.S.C. § 1681n(a)(3).

## **PRAYER FOR RELIEF**

60.     WHEREFORE, Plaintiffs, on behalf of themselves and the classes, pray for relief as follows:

a.     Determining that this action may proceed as a class action under Mass. Civ. P. R. 23(b);

b.  Designating Plaintiffs as class representatives and designating Plaintiffs'
counsel as counsel for the classes;

c.  Issuing proper notice to the classes at Defendant's expense;

d.  Declaring that Defendant violated the FCRA;

e.  Declaring that Defendant acted willfully, in knowing or reckless disregard
of Plaintiffs' rights and its obligations under the FCRA;

f.  Awarding statutory damages as provided by the FCRA;

g.  Awarding reasonable attorneys' fees and costs as provided by the FCRA;
and

h.  Granting other and further relief, in law or equity, as this Court may deem
appropriate and just.

**DEMAND FOR JURY TRIAL**

53.  Pursuant to Mass. Civ. P. R. 38(b), Plaintiffs and the classes demand a trial by
jury.

Respectfully submitted,

Dated: 7/8/15

Stuart Rossman (BBO 430640)
Charles Delbaum (BBO 543225)
NATIONAL CONSUMER LAW CENTER
7 Winthrop Square, 4th floor
Boston, MA 02110
(617) 542-8010 (*telephone*)
(617) 542-8028 (*fax*)
srossman@nclc.org
cdelbaum@nclc.org

NICHOLS KASTER, PLLP
E. Michelle Drake, MN Bar No. 0387366*
Daniel C. Bryden, MN Bar No. 0302284*
4600 IDS Center
80 South Eighth Street

Minneapolis, MN 55402
Telephone: (612) 256-3200
Facsimile: (612) 215-6870
drake@nka.com
dbryden@nka.com

GOTTLIEB & ASSOCIATES
Jeffrey M. Gottlieb (JG-7905)*
Dana L. Gottlieb (DG-6151)*
150 East 18th St, Suite PHR
New York, NY 10003
Telephone: 212.228.9795
Facsimile: 212.982.6284
nyjg@aol.com
danalgottlieb@aol.com

*pro hac vice* motions forthcoming


ATTORNEYS FOR PLAINTIFFS AND THE
CLASSES



**HomeGoods** *Marshalls.* **T·J·maxx**

# DISCLOSURE AND ACKNOWLEDGMENT

[IMPORTANT — PLEASE READ CAREFULLY BEFORE SIGNING ACKNOWLEDGMENT]

## NOTICE REGARDING BACKGROUND INVESTIGATION

The TJX Companies, Inc. ("the Company") may obtain information about you from a consumer reporting agency for employment purposes. These reports may contain information regarding your credit history, criminal history, social security verification, motor vehicle records ("driving records"), verification of your education or employment history, or other background checks. The scope of this notice and authorization is all-encompassing, however, allowing the Company to obtain from any outside organization all manner of consumer reports now and throughout the course of your employment to the extent permitted by law. Thus, you may be the subject of a "consumer report", which may include information about your character, general reputation, personal characteristics, and/or mode of living.

> **New York applicants or employees only:** You have the right to inspect and receive a copy of any investigative consumer report requested by the Company by contacting the consumer reporting agency identified below directly.

## ACKNOWLEDGMENT AND AUTHORIZATION

I acknowledge receipt of the NOTICE REGARDING BACKGROUND INVESTIGATION and A SUMMARY OF YOUR RIGHTS UNDER THE FAIR CREDIT REPORTING ACT and certify that I have read and understand both of these documents. I hereby authorize the obtaining of "consumer reports" by the Company at any time after receipt of this authorization and throughout my employment, including at the time of promotion, transfer, or reassignment, if applicable. To this end, I hereby authorize, without reservation, any law enforcement agency, administrator, state or federal agency, institution, school or university (public or private), information service bureau, employer or insurance company to furnish any and all background information requested by Lexis Nexis PO Box 7147-7090 Philadelphia, PA 19170-7090, another outside organization acting on behalf of the Company, and/or the Company itself. I agree that a facsimile ("fax"), electronic or photographic copy of this Authorization shall be as valid as the original.

> **Minnesota and Oklahoma applicants or employees only:** Please check this box if you would like to receive a copy of a consumer report if one is obtained by the Company. ❑
>
> **California applicants or employees only:** By signing below, you also acknowledge receipt of the NOTICE REGARDING BACKGROUND INVESTIGATION PURSUANT TO CALIFORNIA LAW. Please check this box if you would like to receive a copy of an investigative consumer report or consumer credit report at no charge if one is obtained by the Company whenever you have a right to receive such a copy under California law. ❑

FULL NAME: _____Colvin_____      _____Joshua_____      _____Thomas_____
              Last              First              Middle

OTHER NAMES/ALIAS: _____N/A_____
                   Redacted                            Redacted

CURRENT ADDRESS: _____   PHONE _____
                  Street and Number                      Redacted

                  _____Bloomington_____   _____MN_____   _____
                  City                     State          Zip Code

SIGNATURE: _____   DATE: ___4/24/12___
          *If applicant is under the age of 18, the signature of a parent or guardian is required.*

---

**ATTENTION:** The following information is to be completed after a conditional offer has been made and will be used solely for background screening purposes and will not be used in the hiring process.   Redacted

Social Security # _____ Redacted _____ — _____ — _____ .   Date of Birth _____

Driver's License* # _____   State of Driver's License _____

*This information is only required for individuals operating Company vehicles.



## FEDERAL TRADE COMMISSION

# Advisory Opinion to Leathers (09-09-98)

September 9, 1998

H. Rowan Leathers, III, Esq.
MANIER & HEROD
First Union Tower - Suite 2200
150 Fourth Avenue North
Nashville, Tennessee 37219

Re: Sections 603(d), 603(f), and 604(b) of the Fair Credit Reporting Act

Dear Mr. Leathers:

This responds to your letter dated concerning the application of the Fair Credit Reporting Act ("FCRA") to Employment Trac ("ET"), your client. ET provides information to prospective employers about the prior work experience of applicants, primarily in the fast food industry. ET provides the information telephonically (i.e., without a written report) on a specific applicant upon request from a subscriber to this service.

You ask three questions, which we report verbatim preceding our analysis of each.

*1. Is ET's provision of this type of information subject to the FCRA?*

Yes. ET is a "consumer reporting agency" ("CRA") because Section 603(f) defines that term to include any party that "for monetary fees . . . regularly engages in . . . assembling . . . information on consumers for the purpose of furnishing consumer reports to third parties" in interstate commerce. Each report on an employment applicant is a "consumer report" because Section 603(d) defines that term very broadly to include any information bearing on a consumer's credit standing, "character, general reputation, personal characteristics, or mode of living" which is used (among other things) to make employment decisions. An individual's employment history, based on data in ET's files, unquestionably bears on his or her character, reputation, and other listed characteristics.

*2. Section 604(b)(2)(A) of the FCRA seems to require that the consumer disclosure be "in a document that consists solely of the disclosure." With regard to this requirement, is it sufficient that the disclosure be prominently set forth within an application for employment, or must it truly be included on a separate document?*

The disclosure may not be part of an employment application, because the language you quote is intended to ensure that it appears conspicuously in a document not encumbered by any other information. The reason for requiring that the disclosure be in a stand-alone document is to prevent consumers from being distracted by other information side-by-side with the disclosure. A disclosure that is combined with many items in an employment application -- no matter how "prominently" it appears -- is not "in a document that consists solely of the disclosure" as required by Section 604(b)(2)(A).

*3. Section 604(b)(3)(A) of the FCRA requires that a copy of the "report" be provided by the user to the consumer prior to adverse employment action being taken based in whole or in part on the report. In this instance, the report provided to the user is a verbal report, and not a written report. We would appreciate some guidance concerning how to provide a "copy of the report" within the context of this transaction.*

The purpose of this section, which was added in the 1996 amendments to the FCRA, is to provide the consumer with knowledge of information the CRA has reported about him or her that is going to result in adverse action in an employment context, affording the individual an opportunity to respond to it.(1) Where a written report exists, as in the case of a traditional consumer report, Section 604(b)(3)(A) requires that the actual unexpurgated report must be provided to the applicant.(2) Where the employer possesses no written report because the information is provided verbally, as in ET's business, we believe it the employer may comply with Section 604(b)(3)(A) by telling the applicant orally what is in the report before taking adverse action. Because the report itself is oral, an oral "copy" seems the proper method of compliance. An

rejecting the application, complies with the provision by conveying information that Congress intended the consumer to know prior to suffering adverse action.

The opinions set forth in this informal staff letter are not binding on the Commission.

Sincerely yours,

Clarke W. Brinckerhoff

1. S. Rept. 104-184, 104th Cong., 1st Sess. 35.

2. The enclosed staff opinion letter (Hahn, 7/8/98) discusses this subsection in that regard.



ftc.gov

Division of Credit Practices, 1998 WL 34323756 (1998)

1998 WL 34323756 (F.T.C.)

Federal Trade Commission (F.T.C.)

Division of Credit Practices

Fair Credit Reporting Act

Staff Opinion Letter

June 12, 1998

*1  Richard W. Hauxwell, CEO

Accufax Div., Southwest

P.O. Box 35563

Tulsa, OK 74153-0563

**Re: Sections 604 and 606 of the Fair Credit Reporting Act**

Dear Mr. Hauxwell:

This is in response to your letter asking for clarification of sections 604 and 606 of the Fair Credit Reporting Act ('FCRA"). You note that your company is a consumer reporting agency and that you are asking these questions on behalf of your clients. Your questions are addressed below in the order in which you presented them.

*1. Is it safe for us to assume, based on your opinion letter to Mr. Richard Steer, that we can combine the disclosure and release form, which includes applicant identifiers, in one form such as the enclosed sample?*

Section 604(b) of the FCRA requires any employer who intends to obtain a consumer report for employment purposes to disclose this to the applicant or employee (in a document that consists solely of the disclosure) and to obtain the applicant or employee's written permission. As noted in the letter you cited (Steer, 10/21/97), it is our position that the disclosure notice and the authorization may be combined. If they are combined, identifying information (such as date of birth, Social Security number, driver's license number, and current and former addresses) may be included in the form. However, the form should not contain any extraneous information.

While we believe that you may combine the disclosure and authorization (and include identifying information) as you have in the draft form that you included with your letter, we note that your draft disclosure includes a waiver by the consumer of his or her rights under the FCRA. The inclusion of such a waiver in a disclosure form will violate Section 604(b)(2)(A) of the FCRA, which requires that a disclosure consist 'solely" of the disclosure that a consumer report may be obtained for employment purposes. Moreover, it is a general principle of law that benefits provided to citizens by federal statute generally may not be waived by private agreement unless Congress intended such a result. Brooklyn Savings Bank v. O'Neill, 324 U.S. 697 (1945). We note that no authorization for a waiver is contained in the FCRA; nor does the legislative history show that Congress intended that consumers should be able to sign away their legal rights under the Act. [1] Accordingly, employers and other users of information covered by the FCRA may not require consumers to waive their rights under the law.

Division of Credit Practices, 1998 WL 34323756 (1998)

*2. Our members would also like further clarification with regard to Section 606 as to when a Summary of Rights should be provided to the applicant. The language of the law is confusing.*

Section 606 of the FCRA mandates that specific procedures be followed when an investi-gative consumer report is requested by an employer or other user who has a permissible purpose to obtain the report. First, Section 606(a)(1)(A) requires any person procuring an investigative consumer report to disclose this fact to the affected consumer not later than three days after the date on which the report was first requested. Second, Section 606(a)(1)(B) requires that the dis-closure include a statement of the consumer's right to obtain additional information and a copy of the summary of consumer rights prescribed by the Commission. Finally, Section 606(b) sets out the information that must be disclosed when the consumer requests a disclosure pursuant to Section 606(a)(1)(B).

*2 The issue that you raise concerns exactly at what point the Commission's summary of rights must be sent. The language of Section 606(a)(1)(B) is not entirely clear in mandating that the disclosure 'includes a statement informing the consumer of his right to request the additional disclosures provided for under subsection (b) of this section [the nature and scope of the inves-tigation] and the written summary of the rights of the consumer prepared pursuant to section 609(c)." As you can see, the reference to the summary of rights comes after a reference to sub-part 606(b), but in a general discussion of the content of the sub-part 606(a)(1)(A) notice.

There are two possible interpretations of this ambiguous language: (1) that Congress in-tended for the summary to be sent with the initial Section 606(a)(1)(A) notice (that an investiga-tive consumer report has been or may be procured); or (2) that Congress intended that the sum-mary be provided with the subsequent Section 606(b) disclosure of the 'nature and scope" of the investigation. The Commission's 'Notice to Users of Consumer Reports: Obligations of Users Under the FCRA,"[2] states that the summary of rights should be provided with the Section 606(a) notice that an investigative consumer report has been or may be obtained. However, because the statutory language may be interpreted to require that the summary be sent with the subsequent Section 606(b) disclosure, it is unlikely that the Commission's staff would recommend any en-forcement action if the notice is sent with the Section 606(b) notice instead of the Section 606(a) notice.

*3. We would like your opinion regarding end-user organizations which procure criminal and other public record information for employment purposes directly from a federal, state, or county record repository. Would the government repository (agency) providing the information directly to the end-user organization ... requesting the information be considered a consumer reporting agency and subject to the same laws as a privately held consumer reporting agency?*

In general, information that is obtained by an employer directly from a federal, state or county record repository is not a 'consumer report" because the repository (such as a courthouse or a state law enforcement agency) is not normally a 'consumer reporting agency" and is itself not covered by the FCRA. The attached staff letters (Copple, 6/10/98; Goeke, 6/9/98) discuss this issue in more detail. Therefore, an employer who obtains information directly from a public record source is not subject to the FCRA as to that information. However, because of the fact that information in public record sources may be inaccurate or incomplete, we believe that em-ployers who use this type of information should voluntarily disclose to consumers the nature and substance of any public record information that they rely upon in taking any adverse action. If the information is, in fact, inaccurate or incomplete, the consumer may then take steps to correct the problem.

*3 I hope that this information is helpful to you. The views that are expressed above are those of the Commission's staff and not the views of the Commission itself.

Sincerely,


William Haynes
Attorney

Division of Credit Practices, 1998 WL 34323756 (1998)

Division of Credit Practices

Footnotes

1       The FCRA is part of the Consumer Credit Protection Act, 15 U.S.C. ) 1601. We note that the Truth In Lending Act, which is
        Subchapter I of the Consumer Credit Protection Act, does permit consumers to waive certain rights.
2       The Commission's notice may be found at 16 C.F.R. ) 601, Appendix C (1997).

                                    1998 WL 34323756 (F.T.C.)

                        © 2015 Thomson Reuters. No claim to original U.S. Government Works.

# COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss.                                   SUPERIOR COURT DEPARTMENT
                                               BUSINESS LITIGATION SESSION

_____
Eliane Evers, Stefon Harris, and Joshua Colvin,   )   Case No. 15-2059 BLS
individually and as representatives of the classes, )
                                               )
                                               )
                    Plaintiffs,                )
                                               )
v.                                             )
                                               )   **ACCEPTANCE OF SERVICE**
The TJX Companies, Inc.,                       )
                                               )
                    Defendant.                 )
_____     )

PLEASE TAKE NOTICE that Pamela Devata of Seyfarth Shaw, LLP, attorney for The

TJX Companies, Inc. ("TJX") has been authorized to accept service on behalf of TJX and does

hereby acknowledge service of the Summons and the Complaint in the above-entited action for

and on behalf of TJX with like effect as personal service upon such party.

Ms. Devata further acknowledges service of the demand letter sent by E. Michelle Drake

pursuant to M.G.L. ch. 93 § 9 (3), as well as the Business Litigation Session Notice of

Acceptance and attached form regarding the Business Litigation Session Discovery Pilot Project.

Dated:  7/23/15

_____
Pamela Q. Devata, Attorney for Defendant

1

# Commonwealth of Massachusetts
## County of Suffolk
## The Superior Court

CIVIL DOCKET#: **SUCV2015-02059-BLS1**

RE:     Evers et al v The TJX Companies, Inc.

As you may know, the Business Litigation Session began implementing a Discovery Pilot Project in January, 2010. This pilot project is available on a voluntary basis for all new cases accepted into the BLS and for cases which have not previously had an initial case management conference. Counsel should be prepared to discuss the pilot project with the Court at the initial case management conference.  For a detailed copy of the BLS Pilot Project, counsel are directed to the Trial Court home page at: http://www.mass.gov/courts/courtsandjudges/courts/superiorcourt/index.html)

If a party is willing to participate in the project, that party's counsel should so indicate below and return this form to the appropriate session clerk.

**Yes,**_____ is willing to participate in the Discovery Pilot Project.
(Party's Name)

Case Name Evers et al v The TJX Companies, Inc.

Docket Number CIVIL DOCKET#: **SUCV2015-02059-BLS1**

Counsel For_____          Date_____

Firm Name and Address
_____

_____

_____

Please sign and return to:
Helen Foley, Asst. Clerk      **OR**      Richard V. Muscato, Jr., Asst. Clerk
BLS1, Room 1309                             BLS2, Room 1017
3 Pemberton Square                          3 Pemberton Square
Boston, MA 02108                            Boston, MA 02108

# Commonwealth of Massachusetts
## County of Suffolk
## The Superior Court

CIVIL DOCKET#: **SUCV2015-02059-BLS1**

RE: Evers et al vs. The TJX Companies, Inc.

## NOTICE OF ACCEPTANCE INTO BUSINESS LITIGATION SESSION

This matter has been accepted into the Suffolk Business Litigation Session. It has been assigned to **BLS1**.

Hereafter, as shown above, all parties must include the initials "**BLS1**" at the end of the docket number on all filings.

Counsel for the plaintiff(s) is hereby advised that within seven (7) days of the filing of an appearance, answer, motion or other response to the complaint by or on behalf of the defendant(s) which has been served with process with in the time limitation of Mass. R. Civ. P. Rule 4(j), or such other time as may be modified by the Court, he or she shall send notice thereof to the **BLS1** Session Clerk, Suffolk Superior Court, Three Pemberton Square, Boston, MA 02108.

Upon receipt of such notice, the Court will issue a Notice of Initial Rule 16 Conference for purposes of meeting with all counsel.  Before the Rule 16 conference counsel shall discuss with their clients and with opposing counsel whether the parties will participate in the BLS Pilot Project on Discovery (counsel are directed to http://www.mass.gov/courts/courtsandjudges/courts/superiorcourt/index.html for description of the Project).  Counsel may indicate their respective client's participation by completing, filing and serving the attached form. If by the date of the initial Rule 16 Conference, not all parties have given notice of their participation, counsel shall be prepared to discuss at that conference whether their clients will participate in the Pilot Project.

The Court requests that plaintiff's counsel serve on opposing parties a copy of this notice and the attached form.

Dated: 07/09/2015

NOTICE SENT
07.10.15
N.C./JAN
S.T.R.

(JAT)

_____
Janet L. Sanders
Justice of the Superior Court

# Commonwealth of Massachusetts
## County of Suffolk
### The Superior Court

CIVIL DOCKET#: **SUCV2015-02059-BLS1**

RE:   Evers et al v The TJX Companies, Inc.

As you may know, the Business Litigation Session began implementing a Discovery Pilot Project in January, 2010. This pilot project is available on a voluntary basis for all new cases accepted into the BLS and for cases which have not previously had an initial case management conference. Counsel should be prepared to discuss the pilot project with the Court at the initial case management conference.  For a detailed copy of the BLS Pilot Project, counsel are directed to the Trial Court home page at: http://www.mass.gov/courts/courtsandjudges/courts/superiorcourt/index.html)

If a party is willing to participate in the project, that party's counsel should so indicate below and return this form to the appropriate session clerk.

☐   **Yes,**_____ is willing to participate in the Discovery Pilot Project.
     (Party's Name)

Case Name Evers et al v The TJX Companies, Inc.

Docket Number CIVIL DOCKET#: **SUCV2015-02059-BLS1**

Counsel For_____          Date_____

Firm Name and Address

_____

_____

_____

Please sign and return to:          **OR**          Richard V. Muscato, Jr., Asst. Clerk
   Helen Foley, Asst. Clerk                              BLS2, Room 1017
   BLS1, Room 1309                                        3 Pemberton Square
   3 Pemberton Square                                     Boston, MA 02108
   Boston, MA 02108